THOMAS, PETITIONER, *v.* STATE, RESPONDENT.

(No. 83115—Decided July 22, 1968.)

Common Pleas Court of Cuyahoga County.

JACKSON, J.  This cause came on for hearing on April 17, 1968, on the petition of James Wallace Thomas, a prisoner now confined in the Ohio Penitentiary, Columbus,

Ohio, seeking vacation of his sentence, and upon the answer of the state of Ohio through the offices of John T. Corrigan, Prosecuting Attorney of Cuyahoga County, Ohio.

Petitioner alleges that his privilege against self-incrimination under the Fifth and Fourteenth Amendments to the United States Constitution and his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution as well as his rights under Article I, Section 10 of the Ohio Constitution were violated by the distribution to the jurors of a handbook containing the instructions that the court and jury could consider the failure of defendant to testify, and said failure could be made the subject of comment by counsel. The basic legal allegations in the petition are that (1) under the rule announced by the Supreme Court in *Griffin* v. *California* (April 28, 1965), 382 U. S. 609, petitioner's privilege against self-incrimination was violated by the instruction, and (2) petitioner's right to counsel at a critical stage, as established in a series of cases from *Gideon* v. *Wainwright* (1963), 372 U. S. 335, to the present, was violated since petitioner's counsel had no knowledge of such instructions and, therefore, no opportunity to object or to challenge such statement. Basically, as to this latter claim, petitioner contends that because he had no knowledge and because he had no counsel present at the time when this handbook was distributed, that his subsequently appointed counsel was unable to question the jurors to determine whether or not they would be influenced by such statement, and that counsel was unable to perhaps challenge the entire array if desired.

Respondent filed a general denial to these allegations.

Petitioner's motions to proceed in forma pauperis and for appointment of counsel which accompanied his petition to vacate were granted on April 9, 1968. On the same date, petitioner was ordered remanded to the jurisdiction of this court for a hearing pursuant to Section 2953.21, Revised Code.

The court, upon searching the files and records of the case, and upon listening to the evidence adduced at the oral hearing and having fully considered the same, finds;

That on October 5, 1965, petitioner was indicted by the grand jury for two counts of possession of a narcotic drug pursuant to Section 3719.09, Revised Code, two counts of possession of a narcotic drug for sale pursuant to Section 3719.20(A), Revised Code, and two counts of sale of a narcotic drug pursuant to Section 3719.20(B), Revised Code.

That on October 11, 1965, petitioner was brought before the Honorable Charles W. White for arraignment and, after petitioner was found indigent, said arraignment was continued to October 15, 1965, and a $5,000.00 bond was set.

That on October 15, 1965, petitioner was arraigned before the Honorable Charles W. White and was informed of his constitutional rights, including his right to counsel and of his right to have court appointed counsel. Petitioner pled not guilty.

That on December 1, 1965, previously appointed counsel having withdrawn, Elmer Giuliani, Esq., was appointed counsel for the defense.

That on December 21, 1965, upon a motion filed December 16, 1965, defendant was furnished with a bill of particulars.

That on June 10, 1966, upon a motion by the state, the case was continued to June 13, 1966, without objection by defendant.

That on June 13, 1966, a jury trial commenced before the Honorable Perry B. Jackson and on June 15, 1966, the jury returned a verdict of guilty on both counts of possession and both counts of possession for sale and a verdict of not guilty on both counts of sale of a narcotic drug. Defendant did not take the stand to testify in his own behalf at the trial. Defendant was sentenced to the Ohio Penitentiary for 2-15 years, concurrently, on the counts of possession and for 10-20 years, concurrently, on the counts of possession for sale, all counts to run concurrently.

That on July 13, 1966, defendant's motion for a new trial, which had been filed June 17, 1966, was overruled.

That on July 20, 1966, a notice of appeal and motions for production of transcript and appointment of counsel

were filed. The latter two motions were granted on July 28, 1966.

That on June 2, 1967, the Court of Appeals, in case Number 28110, set aside as contrary to law, petitioner's conviction on the two counts charging possession of a narcotic drug relying on *State* v. *Johnson* (1960), 112 Ohio App. 124. The convictions on the two counts charging possession of a narcotic drug for sale were affirmed.

That on September 27, 1967, petitioner's motion for leave to appeal was overruled by the Ohio Supreme Court.

At the hearing of the petition to vacate on April 17, 1968, petitioner reaverred the allegations set forth above and in addition, claimed that under the "harmless error" doctrine as established in *Chapman* v. *California* (1967), 386 U. S. 18, 17 L. Ed. 2d 705, 87 Sup. Ct. 824, the claimed constitutional errors were not harmless beyond a reasonable doubt. Petitioner further alleged that the right to counsel is a constitutional error of such magnitude that it can never be considered to be harmless. It is petitioner's contention that the distributing of the handbook which contained the erroneous instruction, was accomplished in a manner imputing that it was an official court publication and required reading.

The prosecutor, in closing argument, set forth the proposition "that there was no error whatsoever, not only harmless error, there was no error at all." The prosecutor relied upon the *voir dire* of the jurors and their indication that they would disregard previous notions of what the law might be and would apply the law as given to them by the court.

By way of rebuttal argument, counsel for petitioner submitted "that the *voir dire* of the jurors is not meant to cure error" especially since no comment by the court was specifically directed to the handbook.

The court is fully cognizant of the complicated legal questions involved in this proceeding and notes that some issues and evidence were not discussed by counsel for either side. The issues go far beyond a simple application of *Chapman, supra, Griffin, supra,* and the right to counsel

cases, and the court would be remiss in its duty by failing to fully discuss this case with all attendant implications.

The court first finds that the jury handbook was distributed as a quasi-official publication of the court, and that the instruction contained therein to the effect that the jury could consider the failure of defendant to testify and said failure could be made the subject of comment by counsel constituted constitutional error in violation of *Griffin* v. *California, supra.*

The next question, which the court raises *sua sponte,* is whether this alleged error can now be raised in postconviction proceedings, or whether such issue is *res judicata* as such doctrine is set forth in *State* v. *Perry* (1967), 10 Ohio St. 2d 175. Under this doctrine, any defense or claimed lack of due process that was or could have been raised at the trial or on appeal is *res judicata* and cannot be raised in postconviction proceedings. However, in the instant proceeding, while the jury handbook did exist at the time of trial, petitioner and counsel had no knowledge of its contents, and the discovery of the error was more accident than design. Since the error was unknown to counsel (or the court) it could not conceivably have been raised as error and therefore the court concludes that *res judicata* does not apply to this issue. (See *State* v. *Lynn* (1966), 5 Ohio St. 2d 106.)

The main question, therefore, is whether the error appearing in the handbook is "harmless error" falling within that rule as set forth in *Chapman* v. *California, supra.* It should be noted that the Supreme Court found in the *Chapman case* that the comment and the charge constituted a continual and repeated impression on the jury. The comments went into almost every element of the case and in effect made the defendants, by their silence, "irrefutable witnesses against themselves." The court also held:

"There may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the federal Constitution, be deemed harmless, not resulting in the automatic reversal of the conviction."

The court then said, citing *Fahy* v. *Connecticut*, 375 U. S. 85, 11 L. Ed. 2d 171, 173:

"The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."

And as to the standard of proof:

"* * * before a federal constitutional error can be held harmless, the court must be able to declare that it was harmless beyond a reasonable doubt."

With these rules in mind, the court proceeds to determine whether the handbook error was "harmless" or prejudicial, requiring vacation of the judgment.

At the hearing, in addition to petitioner, three jurors who served at petitioner's trial testified as to the handbook.

Mr. McVicker, on direct examination, testified that he read the handbook the same day as the trial. On cross-examination he testified that he did not resort to the handbook in an effort to apply the law during deliberations; that he made a conscientious effort to accept the law as given by the court and to disregard his prior notions of what the law was or what he thought it to be; and that there was no discussion among the jurors regarding defendant's failure to take the stand.

The second juror, Mrs. Kovarik, testified on direct that she read the handbook and thought it was in her purse during deliberations. On cross-examination she testified that she did not refer to the booklet during deliberations and that she was not influenced by the failure of defendant to take the stand.

The third juror, Mr. Mraz, testified on direct that he received the handbook; that a judge of this court directed the jurors to read it; and that he did not have it in his possession when he went to the jury room. On cross-examination he testified that he applied the law as given by the court and was not influenced by any other law. On redirect he stated that he did not consider the booklet as an official part of court proceedings.

The issues posed by the jury handbook are difficult to

classify. Standing alone, the instruction constitutes a serious violation of an important constitutional right as set forth in *Griffin* v. *California, supra.* And yet, this single, isolated occurrence does not begin to approach the continual and repeated impression present in *Chapman.* The testimony indicated that the jurors did not use the handbook while deliberating, nor did they consider the fact that the defendant failed to testify in his own behalf.

Of initial concern to the court is the failure of the prosecutor to introduce any evidence other than through cross-examination of petitioner's witnesses. The Supreme Court in *Chapman* made it clear that the burden of showing a federal constitutional error to be harmless is "on someone other than the person prejudiced by it." (386 U. S. at p. 24, 87 Sup. Ct. at p. 828.)

The burden, therefore, of proving beyond a reasonable doubt that such error was "harmless" is on the prosecution. The court will now direct its efforts to a determination as to whether that burden has been sustained.

Section 2953.21(C), Revised Code, requires the court to consider:

"* * * in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including but not limited to the indictment, the court's journal entries, the journalized records of the clerk of court, and the court reporter's transcript."

The court has examined these items including the transcript which was previously prepared at the state's cost for petitioner's appeal in Court of Appeals Case Number 28110. Because of the statutory requirement as stated above, this court is of the opinion that such items, although not submitted in evidence during the hearing, are available for the court's consideration.

From the court's charge as set forth in that transcript the court finds the following language:

"Even though you may disagree with the court as to what the law is or should be, it is your duty for the con-

sideration of this case to set aside your own notions as to what the law is or what it should be and for the consideration of this case take the law that the court gives you.

"As I have indicated previously, this is a salutatory (sic) rule because if each member of the jury went back to the jury room for deliberations and each had a different view as to what the law is, it would result in utter confusion. So it is your duty to accept the law that the court gives you and together, you as the judges of the facts and the court as the judge of the law, determine the guilt or the innocence of this defendant." (Defendant's Bill of Exceptions, pages 278 and 279.)

And, from another part of the charge:

"The court says to you that the failure of any defendant to take the witness stand and testify in his behalf does not create any presumption against him. The jury is charged that it must not permit that fact to weigh in the slightest degree against any such defendant nor should this fact enter into the discussion or deliberation of the jury in any manner." (Defendant's Bill of Exceptions, pages 281 and 282.)

The court also notes that the prosecutor, in his remarks to the trial jury did not comment on defendant's failure to take the stand and the court concludes, as to that part of the handbook instruction stating that defendant's failure to testify could be made the subject of comment by counsel, that while such instruction was constitutionally erroneous, such error did not relate in any manner to the function of the jury; that there is no reasonable possibility that such error might have contributed to defendant's conviction; and that such error was harmless beyond a reasonable doubt.

As to that part of the instruction that the jury could consider the failure of defendant to testify, the court has studied the cases cited by counsel, as well as other cases, and has found the law to be as follows:

Most jury handbook decisions, which decisions uphold the propriety of handbooks, are based on one of three reasons:

(1) That the jury could not have possibly been influenced in the verdict.

(2) That where defendant knew of the handbook before trial, it was his duty to object then, and not after the verdict.

(3) That the handbook statement was not prejudicial to defendant. See *Bullock* v. *United States* (6th Cir. 1959), 265 F. 2d 683, cert. den. 360 U. S. 909, 3 L. Ed. 2d 1260, 79 Sup. Ct. 1294; *United States* v. *Allied Stevedoring Corp.* (2nd Cir. 1958), 258 F. 2d 104, cert. den. 358 U. S. 841, 3 L. Ed. 2d 76, 79 Sup. Ct. 58; *Horton* v. *United States* (6th Cir. 1958), 256 F. 2d 138; *United States* v. *Gordon* (7th Cir. 1958), 253 F. 2d 177.

Since it is stipulated in the instant proceeding that defendant's trial counsel had no knowledge of the handbook, there was no duty on petitioner to object before trial. The issues, therefore, to which this court directs itself are:

(1) Whether there is a reasonable possibility that the jury could have been influenced in the verdict; and

(2) Whether the handbook statement, in the overall setting of this case, was prejudicial to defendant.

It seems well settled that a general jury pamphlet, used as a primer to explain duties and responsibilites to new jurors, is an accepted practice in response to a frequently expressed need. (See The Jury System in the Federal Courts—Report of the Judicial Conference Committee on the Operation of the Jury System, 26 F. R. D. 409, 461, 545-558.) It has also been stated that a litigant has no right, constitutional or otherwise, to have his case tried before ignorant jurors, and that it is not an objectionable practice to acquaint the juror with his duties and responsibilities and to increase his understanding of the processes of a trial without reference to any specific lawsuit. *People* v. *Izzo* (1958), 14 Ill. 2d 203, cert. den., 362 U. S. 403, 4 L. Ed. 2d 864, 80 Sup. Ct. 812 (1960); *Gordon* v. *Farmer City Cheese Co.* (1961), 32 Ill. App. 2d 85 [civil case]. Also see *United States* v. *Allied Stevedoring Corp., supra,* and annotation entitled *Indoctrination by court of persons summoned for jury service* (1963), 89 A. L. R. 2d 197 *et seq.*

The court is aware of the single distinguishing feature between the cases cited above and the instant proceeding, namely, the constitutionally erroneous instruction in our handbook; however, based upon the jurors' testimony at the hearing, the records of this case and the specified portions of the bill of exceptions, the court concludes that, as to the *Griffin, supra,* violation, said error, in the setting of this particular case, has been cured by the court's instructions and has been shown by the prosecutor's cross-examination to be harmless beyond a reasonable doubt. The court further finds that there is no reasonable possibility that the instruction might have contributed to the conviction.

The court would state that its application of *Chapman, supra,* was not without some difficulty. Cases subsequent to and interpreting *Chapman* have been based on clearer grounds than those set forth in this proceeding. It is clear, as petitioner's counsel states, that Ohio is bound by the *Chapman* rule. *State* v. *Cowans* (1967), 10 Ohio St. 2d 96, 104, 105. But the several cases finding a *Griffin* violation to be harmless error involved comments in open court. See *United States* v. *Herthaus* (3rd Cir., 1967), 377 F. 2d 484; *United States* v. *Bruzzo* (3rd Cir., 1967), 378 F. 2d 383; *Walsh* v. *United States* (9th Cir. 1967), 371 F. 2d 135; *People* v. *Baker* (Mich. App. 1967), 152 N. W. 2d 43. There are also several California decisions interpreting *Chapman* and the case of *People* v. *Ross* (Sup. Ct. 1967), 60 Cal. Rptr. 254, 429 P. 2d 606, contains an extensive discussion of the *Chapman* rule. Without indicating its view of the majority opinion in that case, this court is impressed by the *Chapman* analysis in the dissent of Chief Justice Traynor. The Chief Justice chastizes the majority as "misconceiv[ing] the purpose of the harmless error rule as it has developed in the federal courts" and states that by focusing only on the outcome of the case, we disregard procedural fairness and the integrity of the judicial process (also see *People* v. *Coffey* [Sup. Ct. 1967], 60 Cal. Rptr. 457, 430 P. 2d 15). Chief Justice Traynor's opinion of the proper procedure under *Chapman* emphasizes the magnitude of the error

and minimizes the impact of the error on the outcome of the case. While this court is in general accord with Chief Justice Traynor's scholarly analysis, it cannot agree that *Chapman* requires the court to ignore the outcome. The Supreme Court in prior interpretations of the federal harmless error rule has held that an appellate court cannot escape completely looking at the outcome, for weighing the effect of the error against the entire record without relating to the verdict would be like working in a vacuum.

The same case stated:

"If, when all is said and done, the (court is convinced) that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand * * *." *Kotteakos* v. *United States* (1946), 328 U. S. 750, 754.

Proceeding now to petitioner's claim of denial of counsel, the court holds that the distribution of handbooks to all prospective jurors in advance of trial, which handbooks are distributed for the general information of jurors and are unrelated to any specific case, is not a part of the trial process of any specific defendant and is therefore not a critical stage in the trial of any specific defendant which would entitle him to have counsel present. The purpose of giving preliminary information to the jurors as a general guide is to better enable them to perform their duties, and any error in said instructions can be raised under the specific violation alleged (in this case, under *Griffin* v. *California, supra*).

Accordingly, upon the records and evidence, the court concludes that beyond a reasonable doubt the error appearing in the jury handbook did not influence the jury; that, beyond a reasonable doubt, there is no reasonable possibility that the instruction might have contributed to the conviction; and that, therefore, the error was harmless beyond a reasonable doubt.

There being no evidence before this court that petitioner is entitled to any postconviction relief, his petition to vacate and set aside sentence is overruled.